[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**AUGUST 22, 2003**
**THOMAS K. KAHN**
**CLERK**

_____

No. 02-15596

_____

D.C. Docket No. 00-01575 CV-T-17B

DONALD MAYNARD,

                                Plaintiff-Appellant,

versus

BOARD OF REGENTS OF
THE DIVISION OF
UNIVERSITIES OF THE
FLORIDA DEPARTMENT OF
EDUCATION, acting by and
through the University of South
Florida,

                                Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 22, 2003)**

Before MARCUS and WILSON, Circuit Judges, and RESTANI[*], Judge.

RESTANI, Judge:

This is an appeal of a final judgment of the United States District Court for the Middle District of Florida, Tampa Division, entered on Defendant-Appellee University of South Florida's ("USF") Motion for Summary Judgment. Plaintiff-Appellant Donald Maynard asserted certain violations of the United States and Florida Constitutions, as well as various statutory claims and a breach of contract claim, all arising out of his dismissal from a USF medical residency program. As did the district court, we find USF immune from suit on all but the federal Title VII employment claim and direct the district court to dismiss the non-Title VII claims for lack of jurisdiction. We affirm judgment for USF on the Title VII claim.

## FACTS

Appellant Maynard is a graduate of Meharry Medical College in Tennessee. After completing medical school, Maynard joined USF's surgical residency program, which typically lasts five years. Through this program, USF supplies residents to local hospitals for varying rotation periods and, in return, the hospitals

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

pay USF a fee. To receive some compensation for their services, residents enter into annual agreements with USF known as "House Officer Contracts," through which the residents receive a stipend. These contracts are limited to one year and are typically renewed so long as the resident receives acceptable reviews.[1]

On April 9, 1999, Dr. Richard Karl, Chairman of the Department of Surgery at USF, told Maynard that he would have to repeat his fourth year of residency because he received low scores on his ABSITE exam, a specialty in-service examination that residents across the country take each year.[2] Less than two weeks later, Dr. Karl gave Maynard written notice that he would be required to repeat his fourth year of residency. According to Maynard, at no time did Dr. Karl provide Maynard with any additional reasons for the decision.

Shortly thereafter, Maynard met with Dr. Peter Fabri, Associate Dean and Accreditation Council for Graduate Medical Education, to discuss appealing Dr. Karl's decision to have him repeat his fourth year. Maynard alleges that Dr. Fabri explained that his problems were related to how others perceived Maynard's

---

[1] As part of the residency program, the faculty is required to evaluate residents in the program at least twice a year to assess residents' knowledge, skills, professional attitudes, oral and ethical development, and professional demeanor, among other things.

[2] At this time, Maynard allegedly asked Dr. Karl to identify any other problems with Maynard's performance, and Dr. Karl did not notify him of any other problems.

culture, his accent, and the way that he walked.[3]  On June 21, 1999, Maynard

informed Dr. Karl that he was going to file an appeal and again requested that Dr.

Karl give him an explanation as to why he was required to repeat his fourth year of

residency.  Maynard claims he did not receive a satisfactory response.  On June

23, 1999, Maynard formally appealed the decision by filing a letter of dispute with

the chairman of the residency program and requested that USF designate a three-

person Professional Dispute Resolution Committee ("PDRC") to review his

appeal, pursuant to the Resident House Officer Policies and Procedures Manual

("Manual").[4]  In addition, Maynard contacted Ted Williams, USF's race relations

manager, to explain that he believed USF's actions were motivated by Maynard's

race.

Although the details are somewhat unclear, it appears that the two parties

ultimately reached a compromise under which Maynard would contract as a

fourth-year surgical resident while performing fifth-year work.  Under this

agreement, Maynard's work would be reviewed after six months and, if his

---

[3] Maynard was born in the Netherland Antilles.

[4] The Manual explains the process through which a resident may appeal a decision related to the residency program.  The resident must first file a letter of dispute with the Chairman of the Program, and then with the Dean of the College of Medicine.  The Manual provides that the Dean shall then designate a three-person PRDC consisting of a faculty member selected by the Department Chair, a faculty member selected by the appellant, and a faculty member outside the Department, selected by the other two.

4

performance was acceptable, USF would promote him to fifth year status, effective January 2000, so that he could complete the program in June 2000 as originally scheduled. Maynard signed the amended fourth-year contract and dropped his appeal. Despite this agreement, however, Maynard continued to request written reasons as to why he was required to repeat his fourth year.

On November 10, 1999, Maynard received a letter identifying specific problem areas: failure to attend conferences, changing schedules without permission, untimely evaluations, and low ABSITE scores.[5] On December 20, 1999, Dr. Karl informed Maynard that he was not eligible to be promoted to the fifth year or to graduate in June 2000. Maynard immediately filed a second letter of dispute and, on January 3, 2000, Dr. Fabri informed Maynard that a PDRC would be formed to consider his appeal. On March 27, 2000, the PDRC upheld Dr. Karl's decision not to promote Maynard.[6] During the deliberations, the committee members independently mentioned their perceptions as to Maynard's unreliability, irresponsibility, poor judgment, failure to improve, and lack of

---

[5] Maynard's ABSITE scores ranked as follows: in 1996, Maynard ranked in the 2nd percentile (nationally); in 1997, Maynard ranked in the 36th percentile; in 1998, Maynard ranked in the 7th percentile; in 1999, Maynard ranked in the 5th percentile; and in 2000 – the year in which Maynard was under particular scrutiny – Maynard ranked in the 2nd percentile.

[6] In the interim, Maynard filed a complaint with the EEOC on which he received a "Notice of Right to Sue" letter in May 2000. Some two years later, Maynard completed a residency program elsewhere.

knowledge. Dr. Karl formally notified Maynard that he was terminated from the program on April 17, 2000.

On July 31, 2000, Maynard filed a nine-count complaint in the district court against USF, asserting various claims for violations of the Florida Constitution and the United States Constitution, for violations of the Florida Civil Rights Act and Title VII of the United States Code, and for breach of contract. On October 12, 2000, the district court entered a Case Management and Scheduling Order establishing a discovery cut-off date of December 31, 2001, and setting the dispositive motion deadline for January 31, 2002. On September 7, 2001, the district court entered an order extending the discovery cut-off to January 31, 2002.

On January 4, 2002, Maynard filed a motion for leave to exceed ten depositions and to re-open nine depositions, which was opposed by USF. The district court entered an order allowing four additional depositions and refused to re-open depositions. Maynard moved for leave to amend his complaint on the last day of the extended discovery period - January 31, 2002. Maynard's motion was denied.

On February 28, 2002, almost one month after the discovery cut-off, Maynard filed his Amended Motion to Compel discovery. The district court denied Maynard's amended motion both because it was untimely and because

6

Maynard's counsel represented to the district court that the issues contained within the amended motion and initial motion had been resolved by the parties. USF filed its Motion for Summary Judgment on March 18, 2002. Maynard filed his opposition to summary judgment on April 4, 2002. Maynard served a notice of taking a Rule 30(b)(6) Deposition Duces Tecum on September 6, 2002. On September 10, 2002, the district court granted USF's Motion for Summary Judgment. Appellant timely appealed the final judgment of the district court and we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

### I. Preliminary Matters

Maynard initially argues that the district court erred in its discovery rulings and with regard to scheduling. We review the district court's rulings on discovery issues for abuse of discretion. Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1570 (11th Cir. 1992). The discovery orders at issue were all entered by Magistrate Judge Thomas Wilson. Under Fed. R. Civ. P. 72(a), Maynard had ten (10) days to file any objections with the district court judge assigned to the case. He did not object at all. Because he failed to timely challenge the magistrate's non-dispostive orders before the district court, Maynard waived his right to appeal those matters here. See, e.g., Farrow v. West, 320 F.3d

7

1235, 1249 n.21 (11th Cir. 2003) ("A party failing to appeal a magistrate judge's order in a nondispositive matter to the district court may not raise an objection to it on appeal to a circuit court.") (citing Stemler v. City of Florence, 126 F.3d 856, 866 n. 9 (6th Cir. 1997) (failure to challenge magistrate judge's discovery order to district court constitutes waiver of claim on appeal)). Accordingly, we do not reach these issues.

Maynard next argues that the district court erred by ruling upon USF's summary judgment motion before Maynard had completed discovery. As explained, at the time of the requests at issue (September 6, 2002), the extended discovery deadline (January 31, 2002) had long since passed, USF's summary judgment motion had been pending for some time, and Maynard had already responded five months before the request. We note that Maynard did not ask the court to stay its summary judgment decision or alert the court to any additional discovery requests that might be forthcoming, because he was dissatisfied with a matter that previously was represented to the Magistrate Judge as resolved. As such, we find that the district court properly proceeded to decide the summary judgment motion before it.

Maynard also appeals the denial of his motion to amend the complaint to (1) assert a retaliation claim under Title VII of the Civil Rights Act of 1964, 42

8

U.S.C. § 2000e-2; and (2) add Dr. Karl as a defendant. We review the district court's refusal to allow the proposed amendments for abuse of discretion. Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998). "Although '[l]eave to amend shall be freely given when justice so requires,' a motion to amend may be denied on 'numerous grounds' such as 'undue delay, undue prejudice to the defendants, and futility of the amendment.'" Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000) (quoting Abramson v. Gonzalez, 949 F.2d 1567, 1581 (11th Cir. 1992). Amending Maynard's complaint on the last day of the already extended discovery period would have produced more attempts at discovery, delayed disposition of the case, and likely prejudiced USF. In addition, there seems to be no good reason why Maynard could not have made the motion earlier. The absence of a Title VII retaliation claim in the original complaint is not explained and the involvement of Dr. Karl was known early on. Because we conclude that Maynard has failed to show good cause for the eleventh hour amendment, we find that the district court did not abuse its discretion by enforcing its timetable for disposition of the case.

## II.    Eleventh Amendment Immunity

The district court granted summary judgment to USF on all of Maynard's common law, statutory, and state and federal constitutional claims, except those

9

based on Title VII,[7] finding USF, by virtue of its affiliation with the State of Florida, entirely immune from suit under the Eleventh Amendment to the U.S. Constitution.[8]  U.S. Const. amend. XI.  Maynard appeals only the granting of summary judgment on his breach of contract claim based on immunity, asserting that the State of Florida has waived immunity for such claims.  We review the district court's order granting summary judgment based on Eleventh Amendment immunity de novo.  Hundertmark v. State of Florida Dept. of Transp., 205 F.3d 1272, 1274 (11th Cir. 2000).

The parties agree that Florida has waived its sovereign immunity for breach of contract suits in its own courts.  See, e.g., Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So.2d 4, 5 (Fla. 1984) ("[W]here the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract.").  The issue before us is whether Florida has waived its Eleventh

---

[7] Apparently, the employment discrimination claim was actually made under 42 U.S.C. § 1983, but the district court interpreted the complaint to allege a Title VII cause of action. 42 U.S.C. § 2000e-2.

[8] The Eleventh Amendment reads as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.

10

Amendment immunity from suit in federal court for breach of contract.[9]

It is well established that, absent an express waiver by the state, the Eleventh Amendment bars state law claims against a state in federal court.  See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).  Maynard relies upon the following Florida statutory provision to provide the necessary waiver:

> The Board of Regents is hereby created as a body corporate with all the powers of a body corporate for all the purposes created by, or that may exist under, the provisions of this chapter or laws amendatory hereof and shall . . . have power . . . to contract and be contracted with, to sue and be sued, and to plead and be impleaded in all courts of law and equity.

Fla. Stat. § 240.205(4) (1999) (emphasis added).

The district court rejected the statute as providing the necessary waiver, citing Coll. Sav. Bank v. Fl. Prepaid Postsecondary Edu. Expense Bd., 527 U.S. 666 (1999).  In that case, the Supreme Court failed to find the requisite waiver in the face of Congress's attempt to impose Lanham Act remedies on state entities. The Court held that the state must make a clear, unequivocal declaration that it intends to submit itself to federal court jurisdiction.  Id. at 676, 119 S. Ct. at 226. "A State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation."  Id. (citation omitted).  Moreover, a state also does

_____

[9] Maynard has also filed suit in state court on the breach of contract claim.

not "consent to suit in federal court merely by stating its intention to 'sue and be sued.'" Id.

There is, however, a slight difference between the language at issue in College Savings Bank and in the case at hand. There, the crucial consent was "to sue and be sued in any court of competent jurisdiction," while here, the statute reads "to sue and be sued in all courts of law and equity." Nevertheless, we can find no meaningful distinction between "any court" and "all courts." Given the Supreme Court's emphasis on the breadth[10] and force of Eleventh Amendment immunity, we do not find the necessary express consent to suit in federal court in this waiver's language. See, e.g., Edelman v. Jordan, 415 U.S. 651, 673 (1974) 94 S. Ct. 1347, 1360-61, 39 L. Ed. 2d 662 ("In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'"); Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241, 105 S. Ct. 3142, 3146, 87 L. Ed. 2d 171 (1985) ("Although a State's general waiver of

---

[10] See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129, 134 L. Ed. 2d 252 (1996) (finding that a state's Eleventh Amendment immunity applies to suit by its own citizens as well as by those of other states and foreign entities).

sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment.") (citation omitted). Accordingly, we find Maynard's breach of contract claim barred on Eleventh Amendment immunity grounds and remand for dismissal for lack of jurisdiction.

## III. Title VII Discrimination Claim

Maynard next argues that the district court erred in finding that he failed to establish a prima facie discrimination case under Title VII. We review the district court's grant of summary judgment de novo. Watson v. Blue Circle, Inc., 324 F.3d 1252, 1256 (11th Cir. 2003). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, Maynard is not required to prove directly that race or gender was the reason for the employer's challenged decision. Rather, in showing that the employer discriminated against him, Maynard may rely on direct or circumstantial evidence of discrimination. See, e.g., St. Mary's Honor Center v. Hicks, 509 U.S. 502, 526 (1993) ("Because Title VII tolerates no racial discrimination, subtle or otherwise, we devised a framework that would allow both plaintiffs and the courts to deal effectively with

13

employment discrimination revealed only through circumstantial evidence.")
(internal quotations and citations omitted).

Direct evidence is "evidence, which if believed, proves [the] existence of
[the] fact in issue without inference or presumption." Merritt v. Dillard Paper Co.,
120 F.3d 1181, 1189 (11th Cir. 1987) (quoting Rollins v. TechSouth, Inc., 833
F.2d 1525, 1528 n.6 (11th Cir. 1987)). If the plaintiff offers direct evidence and
the trier of fact accepts that evidence, then the plaintiff has proven discrimination.
McCarthney v. Griffen-Spalding County Bd. of Educ., 791 F.2d 1549, 1553 (11th
Cir. 1986). Here, Maynard offers no direct evidence of discrimination to support
his claims and, therefore, must rely on circumstantial evidence.[11]

To prevail on a claim for discrimination under Title VII based on
circumstantial evidence, Maynard must show that: (1) he is a member of a
protected class; (2) he was qualified for the position; (3) he suffered an adverse
employment action; and (4) he was replaced by a person outside his protected
class or was treated less favorably than a similarly-situated individual outside his
protected class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802
(1973). The district court found that Maynard only satisfied three of the prongs

---

[11] Maynard does not rely on the alleged opinions of Dr. Fabri, who was not the decision-maker, as sufficient direct evidence of discrimination.

required to establish a prima facie case of discrimination. The district court found that Maynard was a member of a protected class; that Maynard was qualified to serve as a surgical resident; and that Maynard suffered an adverse employment action. The district court found that Maynard failed to establish that similarly-situated individuals were treated more favorably than Maynard in the program. In fact, the district court specifically noted that Maynard brought forth no evidence "absent his deposition" to show that other residents in the surgical residency program were treated more favorably.

To satisfy the prima facie requirement, Maynard must show that a non-minority resident in similar circumstances was retained in the residency program. See Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997). "In determining whether [other residents] are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 (11th Cir.), opinion modified by 151 F.3d 1321 (1998). "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishment imposed." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001), cert. denied, 535 U.S. 1013 (2002).

15

Maynard points to several comparators, although there is very little evidence in the record with regard to any of them. The one who appears most similarly situated to Maynard will be referred to as A.R. In 1998, A.R. received poor evaluations on patient care similar in tone to Maynard's negative evaluations. A.R.'s problems, however, seem to be limited to a discrete period of time in which he had an alcohol problem and for which he was successfully treated. If he was unreliable or made undue errors, it was during the time period specifically related to his alcohol problem. Despite the patient care problems, A.R. was not shown to exhibit low ABSITE scores or other academic problems.

As discussed, Maynard, in addition to poor evaluations on patient care, was criticized for his very low ABSITE exam scores, his lack of reliability, his irresponsibility, his poor knowledge, his failure to attend conferences, his failure to adhere to a schedule, and his failure to turn in evaluations timely. Maynard's problems were not limited to a discrete time period. These issues existed before and continued throughout the probationary period. We find that A.R.'s negative patient care results over an isolated period of time are not a basis for comparison with Maynard's overall poor record over an extended period of time. Regardless of whether this analysis requires "similar" misconduct, see, e.g., Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989), or the seemingly more stringent "nearly

identical" misconduct, see, e.g., <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368-69 (11th Cir. 1998), we find that neither standard is satisfied here.

Accordingly, we conclude that Maynard did not satisfy the prima facie requirements for his Title VII discrimination claim. Thus, we do not reach the issue of whether USF's reasons for the termination were pretextual. The district court did not err in granting defendant summary judgment on the Title VII claim.

AFFIRMED IN PART, VACATED AND REMANDED IN PART.