[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 10, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-15764
Non-Argument Calendar

_____

D.C. Docket No. 02-02863-CV-NW

RILOUS PERKINS,

Plaintiff-Appellant,

versus

RIVERBEND CENTER FOR MENTAL HEALTH, INC.,
BRYAN LIBELL,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Alabama

_____

(June 10, 2005)

Before CARNES, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Plaintiff Rilous Perkins appeals the district court's grant of summary

judgment to defendants Riverbend Center for Mental Health, Inc. ("Riverbend")

and Bryan Libell on his complaint alleging racial discrimination and denial of due process.[1]  After review, we affirm.

## I. BACKGROUND

Riverbend is a state-funded mental health hospital in Alabama.  Perkins, an African-American male, worked for Riverbend as a house manager between 1997 and February of 2002.  Before Perkins began working, Riverbend provided him with a copy of Riverbend's Personnel Policies and Procedures ("the Policy") . According to the Policy, Perkins was an at-will employee who could be dismissed for any reason, including any behavior "where the Chief Executive Officer concludes that immediate dismissal is appropriate."  Additionally, the Policy stated:

> Employment and compensation are for no fixed period of time and can be terminated with or without cause and with or without notice at any time, at the option of the employee or Riverbend.  No representative of Riverbend other than the Chief Executive Officer has the authority to enter into any agreement for employment for any specified period of time or to make any agreement contrary to the foregoing.

According to an October 14, 1997 Employee Conference Form, Ashley Crow, another Riverbend employee, reported that Perkins became hostile with a

---

[1] In the district court, Perkins raised a breach of contract claim under state law, but he has not challenged its dismissal on appeal.  Accordingly, this issue is deemed waived and not discussed further.  See Rowe v. Schreiber, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (an issue that appellant fails to raise on appeal is deemed abandoned).

client, raised his voice, used foul language, and eventually grabbed the client by his shirt.[2]  Subsequently, a November 2, 2000 Employee Conference Form, detailed that Perkins was: (1) frequently unwilling to communicate with co-workers, thereby compromising client care; and (2) prone to frequent displays of disruptive, volatile emotions.[3]  However, Perkins also received numerous positive evaluations from his supervisors.

For example, in September 1998, Valerie Wesson, Perkins's supervisor, noted that Perkins was supportive of other staff members and always positive.  In March 1999, Wesson noted that Perkins was dependable, trustworthy, cooperative with other members of the staff, and always ready to volunteer for tasks.  Wesson further stated that he worked well with all employees and was a team leader.  In May 2000, Wesson gave Perkins another exceptional score and commented that he was dependable and trustworthy.  In May 2001, Riverbend management noted that Perkins was a hard worker and had developed into an excellent team player.

On December 3, 2001, Joann McDougal, a Riverbend employee, filed a complaint with Riverbend management, alleging Perkins: (1) became enraged and

---

[2]Although Perkins's signature is on the October 14, 1997 Employee Conference Form, he denied signing the document.  However, Perkins agreed that if such conduct occurred, it would have been a terminable offense.

[3]Although his signature is also on this document, Perkins denied signing the November 2, 2000 Employee Conference Form.

screamed at McDougal; (2) called McDougal names; (3) insinuated that McDougal received kickbacks from a pharmacy at a staff meeting; (4) refused to apologize; (5) called clients names and threatened to throw one off a bus if he did not stop coughing; (6) contacted a client at home to prevent him from reporting an incident involving Perkins; and (7) uttered racial remarks, such as, "when he sees a white woman that just means trouble for him."

On December 4, 2001, Perkins was called in to speak with Wesson, Liz James, Wesson's supervisor, and Marty Sims, the Human Resources Director at Riverbend. Perkins was informed of McDougal's complaint and that Sims would be investigating the allegations.

Sims met with employees, both former and current, who had worked with Perkins and were mentioned in McDougal's complaint. Sims's investigation revealed that another Riverbend employee, Joan Kilburn, felt scared and intimidated by Perkins. According to Kilburn, after she gave a message to Perkins concerning the use of a note board, he said to her, "[D]on't ever tell me what another staff member has said." Kilburn asserted that Perkins's size, presence, and demeanor were "overpowering and scary."

Kilburn further stated that George Coleman, a client, reported an altercation with Perkins. According to Kilburn, Coleman informed her that while he was in a

4

van with Perkins, Perkins called him a "gigolo" and threatened to throw him off the van if he did not stop coughing. Perkins then called Coleman at home and told him that he "shouldn't be telling this kind of thing." Kilburn also stated that she considered resigning her position because of the working environment.

According to Sims's investigation, Renee Smith, a former Riverbend employee, stated that she witnessed McDougal's reaction to an altercation with Perkins. Smith said that McDougal was so distraught that Smith thought she was suffering from a stroke. According to Smith, Perkins was prone to sudden and severe mood swings, and that during one incident, he "went off" on employee Linda Bullington, questioning her on whether she was fabricating food counts and stealing allocations.

Smith also asserted that she intervened in an altercation between Perkins and Randall Richard, a client. According to Smith, Perkins became so violent she feared for herself and Richard. Smith also stated that at one time or another, Perkins made every single female staff member cry.

According to Joyce Causly, an employee at Riverbend, Perkins was occasionally accusatory and irrational. According to Causly, on two occasions, Perkins had unreasonable, emotional reactions to job assignments that she had given him.

Although Perkins denied all of the above incidents occurred, Sims, after conferring with Riverbend CEO, Bryan Libell, was instructed to terminate Perkins's employment.

## II. THE DISTRICT COURT

Perkins filed this lawsuit, asserting that he was terminated because of his race and that Riverbend had violated his due process rights by not providing him with an opportunity to address the allegations prior to his termination. Specifically, Perkins asserted that the defendants refused or failed to comply with employment policies regarding termination and failed to treat him in the same manner as other employees. Perkins asserted that he: (1) suffered discrimination based on his race, in violation of 42 U.S.C. §§ 1981, 1983, and 2000e; and (2) that he was denied equal protection and due process, in violation of 42 U.S.C. § 1983. Perkins sought reinstatement, back pay, damages, attorney's fees and costs.

With regard to Perkins's Title VII (42 U.S.C. § 2000e), and §§ 1981 and 1983 claims, the district court concluded that Perkins produced no direct evidence of racial discrimination. Accordingly, the district court evaluated Perkins's claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). The district court determined that because Perkins could point to no similarly-situated employees outside his protected class who were treated more favorably,

he failed to make a prima facie case. Further, the district court concluded that even if Perkins could sustain a prima facie case, he failed to produce any evidence to show the reasons given by Riverbend for his termination were a pretext for racial discrimination.

With regard to Perkins's equal protection claim, the district court concluded that because Perkins could not establish that he was treated differently from similarly-situated employees who were not African-American, his claim failed. As to Perkins's due process claim, the district court concluded that because Perkins was an at-will employee, he had no property interest in his continued employment. Accordingly, the district court granted summary judgment to the defendants.[4]

### III. DISCUSSION

A.    Direct Evidence

Perkins first argues that the district court erred in finding that he presented no direct evidence of racial discrimination. "Direct evidence of discrimination is

---

[4]"We review a grant of summary judgment de novo, using the same legal standard as the district court." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1184 (11th Cir. 1997). Summary judgment is proper if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). In order to defeat summary judgment, however, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S. Ct. at 1356. The non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof. Celotex, 477 U.S. at 323, 106 S. Ct. at 2552.

7

evidence which, if believed, would prove the existence of a fact [in issue] without inference or presumption. Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [race] . . . constitute direct evidence of discrimination." Bass v. Bd. of County Comms., 256 F.3d 1095, 1105 (11th Cir. 2001) (internal quotation marks and citations omitted).

Perkins's only proffered direct evidence of discrimination is a conversation he had with Valerie Wesson. According to Perkins, Wesson asked him if he thought she was the type of person who would call another person "nigger," and that the other person would "just have to take it." However, Perkins testified that he did not believe that his conversation with Wesson was inappropriate, and he had never witnessed or heard anything at Riverbend that was racially offensive or inappropriate. Thus, we agree with the district court that Perkins presented no evidence of direct racial discrimination.

B.     Circumstantial Evidence

Under the McDonnell Douglas/Burdine framework, Perkins must first establish a prima facie case of discrimination.[5] McDonnell Douglas, 411 U.S. at

---

[5]To succeed with his discriminatory discharge claim, Perkins had to show that: (1) he was a member of a protected minority; (2) he was qualified for the job from which he was discharged; (3) he was discharged; and (4) he was treated less favorably than a similarly situated individual outside his protected class or his former position was filled by a non-minority. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003).

8

802, 93 S. Ct. at 1824; see Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). If Perkins establishes a prima facie case, the burden shifts to the defendants to "articulate some legitimate, nondiscriminatory reason" for his termination. McDonnell Douglas, 411 U.S. at 802; 93 S. Ct. at 1824. Perkins must then show that the proffered reason is merely a pretext for racial discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981).

> To show the proffered reason is merely a pretext, Perkins must
>
> demonstrate that the proffered reason was not the true reason for the employment decision. The plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.

Jackson v. Alabama State Tenure Comm., – F.3d –, 2005 WL 851935, at *12 (11th Cir. Apr. 14, 2005) (internal quotation marks, brackets, ellipses, and citations omitted). Perkins must produce sufficient evidence to allow a reasonable finder of fact to conclude the defendants' articulated reasons are not believable. Id. This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Id. (internal quotation marks and citations omitted).

9

We concluded that the district court properly determined that Perkins failed to establish a <u>prima facie</u> case of racial discrimination. Further, even assuming Perkins has established a <u>prima facie</u> case of discrimination, he has failed to produce any evidence to show that the defendants' reasons for his termination were pretextual. The fact remains that McDougal complained about Perkins's inappropriate behavior to management. Riverbend conducted a thorough investigation, and decided to terminate Perkins only after many of the charges in the complaint were substantiated by other current and former employees. Perkins offers no evidence or even an assertion that other, similarly-situated employees were not terminated. Consequently, the district court properly granted summary judgment to the defendants.[6]

AFFIRMED.

---

[6]Perkins's equal protection and due process claims are without merit and not discussed further.