[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------

No. 07-10335
Non-Argument Calendar

----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 05-00083-CV-T-N

JAMES H. SHORTZ,

Plaintiff-Appellant,

versus

AUBURN UNIVERSITY AT MONTGOMERY,

Defendant-Appellee.

----------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Alabama
----------------------------------------------------------------

**(April 24, 2008)**

Before EDMONDSON, Chief Judge, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant James H. Shortz, an African-American male proceeding

pro se, appeals the district court's grant of summary judgment in favor of his

former employer, Auburn University at Montgomery (the "University"),

dismissing his racial discrimination claim under Title VII, 42 U.S.C. § 2000e-2(a)(1), and in favor of former University police chief Jay Gardner and Shortz's former supervisor Nell Robinson, dismissing his First Amendment retaliation claim under 42 U.S.C. § 1983. No reversible error has been shown; we affirm.

Shortz's discrimination claim stems from his termination as a University patrolman. In May 2003, Gardner hired Shortz as a patrolman. When he was hired, Shortz was certified by the State of Alabama as a police officer. University policy required Shortz to serve a probationary employment period of 180 days, during which period the University could terminate him for "unsatisfactory job performance" or "violation of any [University] or department rule" without prior written or verbal warning.

Gardner terminated Shortz during his probationary period because of unsatisfactory job performance, based chiefly on his negative evaluation by Robinson, who was his immediate supervisor. According to Robinson, and another of his co-workers, Shortz consistently refused to back up, or to provide assistance to, other police officers while on patrol. Instead, he would only provide back-up assistance if he specifically was called to do so by the dispatcher. Such behavior was against department policy and Robinson's direct orders. And because of the small size of the department, this refusal to assist compromised the

2

safety of the other officers.[1]  Gardner replaced Shortz with an African-American female.

Shortz alleged that his termination was racially motivated based on the treatment of a fellow probationary employee, Billy Price.  Price, who was Caucasian, was not certified as a police officer by the state when he was hired.  In accordance with state regulations, Price was allowed to complete his certification during the probationary period; but he injured himself when first attempting to complete the certification.  Regulations provided that Price could have two attempts to complete his certification, and he was allowed a second attempt by Gardner.  Shortz alleged that he, who had completed all certification requirements, was terminated, while Price (who had initially failed certification requirements) was not.  The district court concluded that Shortz had not made a prima facie case of race discrimination because he had not produced sufficient evidence to permit an inference of discrimination.

Shortz argues, as he did below, that he made a prima facie case of race discrimination based on the University's termination of him, but its failure to terminate Price.  We review a district court's grant of summary judgment de novo;

---

[1]In addition, Shortz was argumentative with Robinson, responded poorly to criticism, and attempted to secretly tape record conversations between him and other department members.

3

and we view the evidence and all reasonable factual inferences in the light most favorable to the nonmoving party. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999).

A plaintiff fails to establish a prima facie discrimination case if he is replaced by a person in his protected class or fails to show that he was treated less favorably than a similarly-situated person outside his protected class. See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003); see also Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (absent other evidence of discrimination, summary judgment properly may be granted "[i]f a plaintiff fails to show the existence of a similarly situated employee").[2]

The district court committed no error when it concluded that Shortz had not made a prima facie case of race discrimination. First, Shortz was replaced by an African-American female and not someone outside his protected class. Shortz also failed to show that Price was a valid comparator. Shortz was terminated because of his unsatisfactory job performance: his consistent failure to back up other officers. He did not allege, nor does the record reflect, that Price engaged in

---

[2]No direct evidence of discrimination is alleged. Because this case is a circumstantial evidence case, the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973), applies. While Shortz contends that he produced direct evidence of discrimination, this contention is plainly incorrect because his comparison to Price is circumstantial evidence.

4

similar misconduct and was not disciplined.  And Shortz's termination was unrelated to certification requirements.  See Anderson v. WBMG-42, Parker Commc'n, Inc., 253 F.3d 561, 564 (11th Cir. 2001) (explaining that similarly-situated comparator employees are those who are "involved in or accused of the same or similar conduct[,] yet are disciplined in a different, more favorable manner") (citation omitted).

We turn to Shortz's section 1983 claim.  He alleged that Gardner and Robinson, in terminating him, retaliated against him for exercising his First Amendment rights.  He cited, as instances of protected constitutional activity, disagreements he voiced to Robinson about these things: (1) police department radio procedures; (2) her opinion that the University should police behavior, not race; and (3) her attitude about police work.  The district court determined that these matters were not of public concern and that, thus, Shortz had not stated a retaliation claim.  On appeal, Shortz argues that the district court never applied the correct standard in evaluating his retaliation claim.

For a public employee to sustain a retaliation claim for speech protected under the First Amendment, the employee must establish, among other things, that he spoke as a citizen on a matter of public concern.  Battle v. Bd. of Regents, 468 F.3d 755, 759-60 (11th Cir. 2006) (citation omitted).  "[W]hen public employees

make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 126 S.Ct. 1951, 1960 (2006).

Here, the communications Shortz refers to -- discussions with Robinson about his disagreement over radio procedures and other department policies -- were made in his capacity as an employee and were about his official duties as an employee; they were not about a matter of public concern.[3] We conclude that, because the First Amendment does not protect a government employee fulfilling official responsibilities, Shortz's retaliation claim must fail. See Garcetti, 126 S.Ct. at 1961; Battle, 468 F.3d at 761-62. Contrary to Shortz's contention, the district court properly evaluated his claim by focusing on whether the speech in question involved a matter of public concern.

**AFFIRMED.**

---

[3]Shortz concedes, in his deposition testimony, that these matters are not of public concern.