[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13444
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 17, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00024-CV-4

TIFFANY A. MARSHALL,

Plaintiff-Appellant,

versus

MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH,
GEORGIA,
CHARLES G. MIDDLETON,
Chief, City of Savannah Fire
Department individually, and
in his official capacity,

Defendants-Appellees,

CITY OF SAVANNAH FIRE DEPARTMENT,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(February 17, 2010)

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Tiffany A. Marshall ("Marshall") appeals the district court's order granting summary judgment to the Mayor and Aldermen of the City of Savannah (collectively, "the City") and to Charles Middleton ("Chief Middleton"), in his official capacity as Fire Chief of the Savannah Fire and Emergency Services Bureau ("Savannah Fire").[1]  Marshall was disciplined and ultimately terminated following an investigation into photographs she posted on a website.  On appeal, Marshall contends that summary judgment was erroneously granted on her claims of gender discrimination under Title VII and 42 U.S.C. § 1983, and on her Title VII retaliation claim.  We AFFIRM.

## I.  BACKGROUND

We recite the evidence in the light most favorable to Marshall.  In September 2006, the City hired Marshall as a firefighter trainee on a probationary status for one year.  Prior to beginning her employment with the City, Marshall switched her account at www.myspace.com ("MySpace") to "private" so that only designated "friends" could view her photographs in the private section of her account.  These photographs included a picture of firefighters from Savannah Fire, which she

---

[1] By consent, the district court dismissed Chief Middleton as a defendant in his individual capacity.

2

obtained without permission from the City's website. Marshall labeled this picture "Diversity." R2-32-2 at 9. The "Diversity" picture was the official recruitment photograph displayed on Savannah Fire's website and other recruiting materials. Marshall also posted a photograph of herself with members from the Georgia Search and Rescue Coastal Task Force ("GSAR"), which included employees of Savannah Fire, as well as a link to a Savannah Fire video.

Displayed on the same page as the "Diversity" and GSAR photographs were two photographs of Marshall. One photo, captioned "Fresh out of the shower," depicts Marshall posing bare-shouldered. R3-39-7 at 8. The other photo reveals Marshall's backside. It is difficult to tell what clothing, if any, she is wearing. She titled that picture, "I model too – this is from like my second shoot!" Id. Marshall met the photographer for the latter picture through a modeling website.

Savannah Fire learned about Marshall's MySpace photographs from an anonymous caller in February 2007. The caller reported that Marshall's account contained images that "may conflict" with the way Savannah Fire wanted to be portrayed. R2-32-4 at 25. Captain Matthew Stanley ("Captain Stanley"), Savannah Fire's public information officer, was able to view Marshall's MySpace photos as her account was not set to private. Captain Stanley printed the screen page containing the photos and delivered it to his superiors. .

3

Chief Middleton instructed Assistant Chief of Operations Stephen Bragg ("Chief Bragg") to investigate the complaint. Chief Bragg discussed the photographs with Marshall's immediate supervisor, Battalion Chief Stanley Mosely ("Chief Mosely"). Chief Bragg decided to issue an oral reprimand, the lowest level of disciplinary action, for Marshall's violations of Savannah Fire's rules and regulations. The written summary of the oral reprimand stated that Marshall had violated Article 13.00, sections 13.25[2] and 1330(a) and (b),[3] by

---

[2] Section 13.25, entitled "Unbecoming Conduct," states:

Employees are expected to maintain a reasonable and decent standard of conduct in their private life as well as their profession[al] life and not bring discredit to the department by his/her misdemeanors. Conduct unbecoming of an employee shall include:
1) Actions that which brings the Department into disrepute or reflects discredit upon the employee as a member of the Department[;]
2) Actions that directly and/or indirectly impairs the operation or efficiency of the Department or employee.

R2-32-2 at 47.

[3] Section 13.30, entitled "Department Representation/Conflict of Interest," states in relevant part:

a) Commercial Testimonials: Employees shall not permit their names or photographs to be used in endorsing any product that is service-connected with the Fire and Rescue Department without the permission of the Fire Chief, and shall not allow their names or photographs to be used in any commercial testimonial, which alludes to their positions or employment with the Department.

b) Personal Publicity: Employees shall not use their positions within the Department to enhance or promote any private enterprise, or to seek personal publicity.

4

posting Savannah Fire pictures on MySpace, which in conjunction with pictures of a personal nature, brought "discredit to [the] City and Savannah Fire Department." R2-32-2 at 42. Additionally, the reprimand stated that she had exhibited unbecoming conduct by using her position with Savannah Fire "to enhance and to seek personal publicity" without permission. Id.

Chief Middleton agreed with Chief Bragg's assessment of the situation. Chief Middleton explained the rationale for disciplining Marshall as follows:

> I had been made aware that she had posted a Savannah Fire photograph and other photographs containing images of Savannah Fire personnel without authorization. At Savannah Fire we work at having a positive image, and we want to be viewed as a professional, competent department with outstanding members. We don't want to be viewed as the fire department with female firefighters wrapped in towels. Her personal photographs showing her scantily clad and promoting her modeling, next to a Savannah Fire photograph and other clear images of Savannah fire personnel, alluded to her position as a firefighter with Savannah Fire while using her notoriety as a Savannah Fire firefighter to promote herself as a model or for other personal publicity reasons. This use conflicted with, and discredits, the professional image of Savannah Fire.

R2-32-3 at 2.

After learning of Marshall's web page, Savannah Fire decided to issue General Order 07.012, "to reinforce everyone's understanding of our existing Rules and Regulations which pertained to posting Savannah Fire photos and

---

R2-32-2 at 49.

5

images on websites." R2-32-3 at 4. The order, dated 28 February 2007, stated that Savannah Fire's identity could not be used for personal, recreational, or fraternal endorsement without the permission of the Fire Chief or his designee. If personnel did not remove the identifiers from their web pages or seek permission to use them by 7 March 2007, they would face disciplinary action. According to Chief Bragg and Chief Middleton, the General Order had "nothing to do" with Marshall's reprimand, which was instead based on her violation of Savannah Fire's rules and regulations. R2-32-5 at 38; R2-32-3 at 4.

On 2 March 2007, Marshall met with Chief Middleton, Chief Bragg, and Chief Mosely. Chief Middleton informed Marshall that her MySpace account violated Savannah Fire's rules and regulations as cited in the oral reprimand. Chief Middleton gave her a copy of those rules and explained that she lacked permission to post pictures related to Savannah Fire, including photographs of her co-workers in uniform. Marshall denied violating any rules. Instead, she questioned both Chief Middleton and Chief Bragg as to whether they had shown the pictures to anyone else. Although Marshall indicated that she would remove the Diversity photograph, she never agreed to remove the GSAR picture, even after Chief Middleton gave her a direct order to do so. Marshall also initially refused to sign the oral reprimand. When Chief Bragg told her to "give it back," Marshall told

6

him, "[S]ir, I will not be talked to like that." R2-32-2 at 17. After that comment, Chief Mosely asked Marshall to speak with him in another room.

When she went back into the meeting, Marshall protested that she was being singled out. When asked why, she stated that she was not the only firefighter on MySpace with photographs related to Savannah Fire. Chief Middleton replied that he was unaware of other such firefighters and asked her for their names. Marshall would not disclose any. Instead, she told Chief Middleton that he could find their web pages himself in the same way he found hers. Marshall further noted that the recently issued General Order afforded all personnel until 7 March 2007 to remove any violating pictures, and that Marshall was being denied this opportunity. Marshall ultimately signed the reprimand but added the following: "By signing this disciplinary action, in no way, shape, or form do I agree to the charges posted against me." R2-32-2 at 42.

Although Marshall admits that she became "upset" during the meeting, she denies speaking in a loud or combative manner. Id. at 19-20. All three Chiefs were left with different impressions of Marshall's behavior, however. Chief Middleton described Marshall as "defensive, at first in denying and not being aware of policy violations, to being combative." R2-32-3 at 2. In his recollection, Marshall aggressively "demanded that I give her everything that we had, and she

7

demanded to know who else knew about the website, and was I sharing the information with anyone else." Id. at 2-3. Chief Middleton was also shocked by Marshall's refusal to disclose the names of other potential violators, noting that he had never had a firefighter refuse a request for information. He summed up the meeting by stating, "Her combative tone, the sharpness of her words, and her disregard for my authority, I have never experienced with a subordinate to this extent during my thirty-three years of fire service. This was even more astounding since this was a probationary firefighter." Id. at 3. Chief Bragg likewise viewed Marshall as argumentative, disrespectful, loud, and combative. According to Chief Bragg, Marshall pointed fingers and argued with Chief Middleton as to whether he had shown the photos to others. Chief Bragg further found Marshall's refusal to address him by his title, as well as her conduct toward Chief Middleton, to be insubordinate. Chief Mosely concurred that Marshall's demeanor and attitude were disrespectful and inappropriate.

Three days after the meeting, Chief Bragg advised Chief Middleton that Marshall would be terminated based on her "denial of violation of Fire Department policy, disrespect toward administration and Chief Officers, [and] disregard for [the] oath of a Savannah Fire Department Firefighter." R2-32-5 at 63-65, 86. Chief Middleton, who is responsible for making termination decisions, agreed with

8

the recommendation and accepted Chief Bragg's decision to dismiss Marshall as a probationary employee. Chief Bragg also relayed the decision to Chief Mosely, who agreed that Marshall should be terminated based on her insubordination. In a letter dated 6 March 2007, Chief Bragg notified Marshall that, effective 8 March 2007, she would no longer work for Savannah Fire based on her "unsatisfactory probation period." R2-32-5 at 87.

In February 2008, Marshall filed suit, asserting one count of a violation of Title VII of the Civil Rights Act of 1964 based on gender, race,[4] and/or national origin discrimination. In April 2008, she filed an amended complaint. In count one, she alleged she was terminated based on her gender and race in violation of Title VII. Specifically, she claimed that no similarly situated male employees, or white or black employees, "were subjected to this discipline for equal offenses." R1-12 at 4. Marshall did not allege that she was terminated in retaliation for complaining that she was being singled out as a female. In count two, she added a claim under 42 U.S.C. §1983, stating that Chief Middleton had violated her Fourteenth Amendment equal protection rights. In count three, Marshall claimed that her termination violated her First Amendment right "to freely communicate on

_____

[4] Marshall stated in her amended complaint that she is "of mixed race." R1-12 at 4. She later explained in her deposition that her mother is Caucasian and her father's ethnic background consists of Hindu Indian and African-American.

9

a completely personal basis where no real or imagined damage to her employer has been demonstrated." Id. at 6.

After the City and Chief Middleton filed a motion for summary judgment, Marshall filed a response, raising for the first time a Title VII claim for retaliation. Specifically, she argued that her termination violated Title VII because it was in retaliation for her complaints that she was singled out as a female.

In June 2009, the district court granted the motion for summary judgment. The court first dismissed Marshall's racial discrimination claim on grounds that she did not assert it her in Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), nor did she address it in her response to the motion for summary judgment. Turning to her gender discrimination claim, the court found that Marshall failed to make out a prima facie case of disparate treatment because she did not establish that other similarly situated male employees were treated more favorably. Specifically, the court found that Marshall had failed to show that Chief Middleton or Chief Bragg knew of other violators at the time they disciplined Marshall. With respect to Marshall's retaliation claim, the court found that this claim was never pled prior to her response to the motion for summary judgment. The court concluded that the lack of fair notice prejudiced the defendants, as evidenced by the absence of any

questions about retaliation during Marshall's deposition.  Finally, the court determined that her "speech" in disseminating photographs on her MySpace page was not entitled to First Amendment protection.  R4-48 at 29-30.

On appeal, Marshall only contests the grant of summary judgment with respect to the City on her claims of gender discrimination under Title VII and 42 U.S.C. § 1983, and on her claim of retaliation under Title VII.[5]

## II.  DISCUSSION

We review the district court's grant of summary judgment de novo, considering the evidence in the light most favorable to Marshall.  Rioux v. City of Atlanta, Ga., 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is proper if "there is no genuine issue as to any material fact" and the moving party "is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2) (2009).  No genuine issue of material fact exists if Marshall fails to establish an element essential to her claim on which she will bear the burden of proof at trial.  See Jones v. Gerwens, 874 F.2d 1534, 1538 (11th Cir. 1989).

A.  Sex Discrimination Claims under Title VII and Section 1983

Marshall alleges that her discipline and termination violated Title VII and

---

[5] Marshall does not argue on appeal any claims against Chief Middleton in his official capacity, or any claims of racial discrimination or First Amendment violations.  These claims are therefore deemed abandoned.  See United States v. Jernigan, 341 F.3d 1273, 1284 n.8 (11th Cir. 2003).

11

her equal protection rights pursuant to 42 U.S.C. § 1983. Title VII prohibits employers from engaging in practices that discriminate on the basis of sex. 42 U.S.C. § 2000e-2(a) (2003). The Equal Protection Clause of the United States Constitution prohibits unlawful sex discrimination in public employment. Cross v. State of Ala., 49 F.3d 1490, 1507 (11th Cir. 1995). Title VII and § 1983 claims have the same elements where, as here, the claims are based on the same set of facts. Rioux, 520 F.3d at 1275 n.5. Accordingly, we will analyze Marshall's Title VII claims in conjunction with her § 1983 claims.

Marshall bases her disparate treatment claim on circumstantial evidence. In order to prevail, Marshall must first establish a prima facie case of discrimination by showing that "she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). The adverse employment action here consists of the oral reprimand and her discharge. For claims involving discipline for a violation of work rules, Marshall must show either that she did not violate the work rule, or that she "engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against [her] were more severe than those enforced against the other persons who engaged in similar misconduct."

12

Jones, 874 F.2d at 1540. A prima facie case for discriminatory discharge may be satisfied by showing that she was a member of a protected minority, she was qualified for the job, she suffered an adverse employment action, and she was replaced by someone outside her protected class or was treated less favorably than a similarly situated individual outside her protected class. Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003).

With respect to her oral reprimand, Marshall asserts that she established her prima facie case in both ways: she did not violate any work rule, and her conduct was identical to similarly situated male firefighters who were neither investigated nor disciplined. Marshall did not make this dual argument in her response to the summary judgment motion, however. She instead framed her claim as follows: "The disparate treatment of which [Marshall] has complained . . . is the failure of Defendants to give her the same opportunity to remove [Savannah Fire] images from her Web site before being disciplined – an opportunity given to her identically situated male co-workers." R1-38 at 9. Not surprisingly, the district court made no factual finding as to whether Marshall had actually violated the City's rules and regulations. The court only analyzed Marshall's allegation that similarly situated male firefighters were treated differently than her.

13

"This Court has repeatedly held that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quotation marks and citation omitted). The purpose of this rule is to prevent our adjudication of fact-bound issues that district courts had no opportunity to resolve, and to limit our review to "claims of judicial error in the trial courts." Id. Given that the district court was not presented with and did not resolve the fact-bound issue as to whether Marshall established a prima facie case of discrimination based on her non-violation of the City's rules, we decline to consider this argument on appeal. See id.

Marshall also contends that the disciplinary measures enforced against her were more severe than those enforced against similarly situated employees. A valid comparator requires an employee who is "similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam). Two critical factors to consider are "the nature of the offenses committed and the nature of the punishment imposed." Maynard, 342 F.3d at 1289 (quotation marks and citation omitted). Additionally, Marshall must show that the person imposing the discipline knew of the comparator's alleged misconduct "and that the known violations were consciously overlooked." Jones, 874 F.2d at 1542. The ultimate

14

burden lies on Marshall to show a similarity between her conduct and that of male employees who were treated differently, and not on the City to disprove their similarity. See id. at 1541.

Marshall has not met her burden here. She asserts that other male firefighters had Savannah Fire-related and other personal photos on their MySpace pages. Even if we assumed that these firefighters violated the same rules and regulations as Marshall, the district court correctly found that the Chiefs lacked knowledge of these firefighters. It is undisputed that Chief Middleton told Marshall he was unaware of any other current violators, and that Marshall refused to disclose any specific names. Had he known of any firefighters using Savannah Fire photos or images on their personal web page, Chief Middleton stated that "they would have been treated exactly the same way as Ms. Marshall." R2-32-3 at 4. While Chief Bragg and Chief Mosely had heard rumors of others in a potentially similar situation at the time of Marshall's oral reprimand, they never received any information identifying a particular person, as in Marshall's case. Absent proof of such knowledge, Marshall cannot establish a prima facie case of discrimination. See Jones, 874 F.2d at 1542.

Marshall attempts to rebut this conclusion with two arguments. First, she concedes that the Chiefs knew only of a rumor at the time they delivered the oral

reprimand, but she nevertheless faults the Chiefs for not investigating male firefighters. Marshall's argument ignores the fact that Chief Middleton asked Marshall to identify any violators and Marshall refused to cooperate. Unless Savannah Fire receives a specific complaint, Chief Bragg explained that "we don't go searching for people on web sites." R2-32-5 at 83. Marshall's claim that Chief Middleton acted with complete indifference to her allegations is thus without merit.

Second, Marshall argues that the issuance of General Order 07.012 proves that the Chiefs knew other male employees were engaging in the same conduct as Marshall, yet they chose to do nothing about it. The General Order was not issued only for male employees though. Rather, Chief Bragg noted that it was aimed at everybody – "m[e]n, women, doesn't make any difference" – so as to ensure compliance with the existing rules and regulations. Id. at 36-37. Chief Bragg stated that he would have requested any known violator to remove the offending materials immediately, as done with Marshall. The issuance or application of General Order 07.012 thus does not show that other similarly-situated male firefighters were treated differently than Marshall.

Turning to Marshall's termination, we find no evidence in the record of a valid comparator. Marshall submits that Tim Sendelbach ("Sendelbach"), a former Chief of Training for Savannah Fire, was never disciplined despite his extensive

16

production and use of Savannah Fire images. According to Sendelbach's affidavit, however, he merely assisted in the production of training videos with the full cooperation of his supervisors. Moreover, Sendelbach averred that he never had Savannah Fire property or images on his personal website. Sendelbach is thus not similarly situated to Marshall. Marshall's attempt to compare herself to Chief Mosely fails for the same reason. Marshall notes that Chief Mosely has photographs at home of himself in uniform, and that his children most likely have photographs with him in uniform also. Marshall does not explain how such photographs discredited Savannah Fire or were being used to seek personal publicity. As there is no evidence that Chief Mosely violated the same rules and regulations as stated on Marshall's reprimand, he does not constitute a valid comparator.

Furthermore, Marshall's termination was not based solely on her posting of Savannah Fire photographs on her website. The reasons given for Marshall's discharge were her unsatisfactory probationary period, her denial of violating Savannah Fire's policies, her disrespect toward superior officers, and her disregard for the oath of a Savannah Fire Department firefighter. The record contains no evidence of a male firefighter who was on probationary status, disputed alleged violations of Savannah Fire's rules, disobeyed direct orders of the commanding

17

chiefs, and showed disrespect. Consequently, Marshall has failed to establish that she was treated less favorably than a male firefighter who was "similarly situated in all relevant respects." Holifield, 115 F.3d at 1562. Without a valid comparator or other evidence of discrimination, Marshall's prima facie case fails.

In sum, Marshall failed to carry her burden of establishing a prima facie case of discrimination. The district court correctly granted the City's motion for summary judgment on Marshall's gender discrimination claims under Title VII and § 1983.

B. Title VII Retaliation Claim

Marshall further submits that her termination violated Title VII's prohibition against retaliation for opposing an unlawful employment practice. Specifically, she argues that she was terminated in retaliation for her complaint during the oral reprimand meeting that she was being singled out as a female. We agree with the district court that Marshall failed to plead her Title VII retaliation claim in compliance with Federal Rule of Civil Procedure 8(a).

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (2009). The purpose of this rule is to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Davis v. Coca-

18

Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007)).

Under Title VII, an employer may not discriminate against an employee in retaliation for opposing an unlawful employment practice under Title VII. See 42 U.S.C. § 2000e-3(a) (2003). A prima facie case of retaliation requires the plaintiff to show that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is some causal connection between the two events. See Holifield, 115 F.3d at 1566. "Although a Title VII complaint need not allege facts sufficient to make out a . . . prima facie case, . . . it must provide enough factual matter (taken as true) to suggest" discriminatory retaliation. Davis, 516 F.3d at 974 (quotation marks and citation omitted).

Here, neither Marshall's original nor amended complaint pled a Title VII retaliation claim in satisfaction of the demands of Rule 8(a)(2). Not only did Marshall omit any reference to the requirements of a cause of action under 42 U.S.C. § 2000e-3(a), but she also failed to allege facts showing that she engaged in activities protected by Title VII that resulted, through retaliation, in her termination. We agree with the district court that this lack of notice prejudiced the City. During her deposition, Marshall never indicated that she believed she was fired as a result of her telling the Chiefs that she was being singled out. She

19

instead maintained that her termination resulted from her disparate treatment as a female. Consequently, the City never asked any questions about retaliation or the elements of 42 U.S.C. § 2000e-3(a). The district court correctly concluded that allowing Marshall to assert this claim for the first time in her response to the City's motion for summary judgment would prejudice the City.

Marshall attempts to get around her pleading defect by pointing to certain phrases in her amended complaint – "misapplication of . . .rules," "unequal distribution of punishment," "improper representation and notification," "unequal enforcement," and "employee harassment." R1-12 at 4. In Marshall's view, any Title VII claim could be pursued under these generalized terms of discrimination. When considered in conjunction with her EEOC charge and discovery filings, Marshall maintains that the City had clear notice of her retaliation claim.

We have previously rejected the argument, however, that a mere generalized claim of discrimination is sufficient to raise a particularized Title VII claim. See Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1568-69 (11th Cir. 1987). In Coon, the plaintiff attempted to add specific Title VII claims based on a statement in her EEOC charge attached to her complaint that "[w]omen in general are held back from advancement in the mill production line." Id. at 1568. We concluded that this generalized claim of discrimination "did not expand the scope of the complaint

20

to include her additional claims." Id. Since Coon's complaint never included the additional claims, the mention of such claims in the pretrial stipulation, discovery, and motions, was "not a substitute for the factual allegations of a complaint under Federal Rule of Civil Procedure 8(a)." Id.

As in Coon, Marshall's generalized claims of discrimination do not raise a particularized claim of retaliation. Though Marshall checked the box for retaliation in her EEOC Charge of Discrimination, she did not attach this charge to her complaints nor did she add a claim of retaliation when she amended her complaint. The fact that Marshall could have pleaded her Title VII retaliation claim in her amended complaint, but did not, does not somehow render her claims "present" within her complaint. Coon, 829 F.2d at 1570.

We also reject Marshall's attempts to blame the City for her defective pleading. She suggests that the City should have moved for a more definite statement of claims under Federal Rule of Civil Procedure 12(e). That rule permits a party to move for a more definite statement when a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e) (2009). While the City did not file such a motion, they did alert Marshall to the inadequacy of her original complaint under Rule 8(a) by filing a motion to dismiss the complaint. Marshall responded by filing an amended complaint in

21

which she listed only one count of a Title VII violation based on her allegations that no similarly situated male, Caucasian, or African-American colleagues were subjected to the same discipline for equal offenses. The amended complaint was not so "vague or ambiguous" as to require a motion for clarification. Compare Davis, 516 F.3d at 983 (noting that defense counsel should have moved for a more definite statement of pleading where the complaint purported to combine in one count multiple claims of eight plaintiffs). Marshall's argument merely seeks to transfer her burden to satisfy Rule 8(a)'s pleading requirements onto the City's shoulders. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (noting that it is the plaintiff's obligation to provide the grounds for relief). This she cannot do.

In sum, the district court correctly concluded that Marshall's amended complaint was insufficient under Rule 8(a) to raise a Title VII retaliation claim. We further agree that this lack of notice prejudiced the City. Accordingly, we affirm the district court's grant of summary judgment as to this claim.

### III. CONCLUSION

Based on the foregoing, we AFFIRM the grant of summary judgment on Marshall's claims of gender discrimination under Title VII and 42 U.S.C. § 1983, and on her Title VII retaliation claim.

**AFFIRMED.**