[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-16560
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 20, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-80446-CV-KLR

WILLIAM HANFORD,

Plaintiff-Appellant,

versus

THE GEO GROUP, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 20, 2009)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

William Hanford appeals the district court's order granting summary

judgment in favor of his former employer, The GEO Group, Inc. ("GEO"), on his

claim of racial discrimination pursuant to 42 U.S.C. § 1981. After review, we

affirm.[1]

## I. BACKGROUND

### A. Hanford's Employment with GEO

Defendant GEO specializes in the private operation and management of

correctional facilities worldwide. GEO operates the South Bay Correctional

Facility ("South Bay"), a close-custody, adult male detention facility in South Bay,

Florida.

Plaintiff Hanford, who is African-American, began working as a Corrections

Officer at South Bay in November 1996. "Corrections Officer" is the lowest title

in the hierarchy of employees at South Bay. Higher positions are, in ascending

order, Sergeant, Lieutenant, Captain, Colonel, Assistant Warden, and Warden.

Richard Clark, who is white, was the Warden of South Bay beginning in

December 2002. In September 2003, Clark was named Vice President of the

Eastern Region, a position he held concurrently with his position as Warden of

---

[1]We review a district court's grant of summary judgment de novo. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007). Summary judgment is appropriate when the evidence presents no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In examining the record, we view the evidence in the light most favorable to the non-moving party." Thomas, 506 F.3d at 1363.

South Bay until December 2003. Ernest Stepp, who is white, became Warden of South Bay in December 2003.

In 2001, Hanford was promoted from Corrections Officer to Sergeant. In February 2003, Clark promoted Hanford to Lieutenant. The positions of Sergeant and Lieutenant both include supervisory responsibilities.

GEO had an employee discipline policy while Hanford was employed. The discipline policy provided for various levels of disciplinary sanctions for employees who violated GEO policies and rules, including reprimand, disciplinary probation, suspension, demotion/shift reassignment, and termination. The discipline policy listed as non-exhaustive examples of violations that may result in disciplinary action: "[m]alicious use of profane or abusive language or racial slurs[,]" and "[d]estroying evidence or giving false testimony." It also provided: "depending on the surrounding circumstances, the level of violation may vary[,]" and "[t]ermination may be applied under appropriate circumstances to any violation." GEO supplied Hanford with updated versions of the Employee Handbook containing the employee discipline policy throughout his employment.

**B.    Hanford's Conduct and Disciplinary Actions Taken Against Him**

GEO imposed various disciplinary sanctions on Hanford throughout his career. In October 1998, Hanford was suspended for three days for using profane

or abusive language in the workplace. While he was a Lieutenant, Hanford received (1) a written reprimand for again using profane or abusive language; and (2) a written reprimand for handcuffing an inmate for too long.

On September 16, 2004, a Corrections Officer at GEO submitted an Incident Report and Employee Complaint Form alleging Hanford called him a "nigger" and used profanity towards him and threatened to lie about the incident if a complaint were filed.[2] On September 18, 2004, a Sergeant at GEO submitted another Incident Report and Employee Complaint Form alleging Hanford used profanity towards her. Hanford later admitted he told her, "I don't give a damn what you do."

These two complaints against Hanford were investigated by the Facility Inspector and Assistant Inspector at South Bay, both of whom are African-American. The inspectors concluded there was sufficient evidence to substantiate the allegations that Hanford violated GEO policies against use of profanity and giving false testimony. The Facility Inspector forwarded her written assessment of the charges against Hanford to Warden Stepp. In accordance with GEO policy, Warden Stepp directed that the two complaints be combined and heard in a

---

[2]In an affidavit collected during the investigation of this complaint, another GEO employee stated she heard Hanford say, "Fuck nigger, you better walk a straight line from here on out."

4

disciplinary hearing. Warden Stepp assigned Assistant Warden Norvell "Ray" Meadors to conduct the hearing and recommend disciplinary actions. Meadors is white.

On February 28, 2005, Assistant Warden Meadors conducted a disciplinary hearing at which Hanford appeared. Meadors concluded evidence substantiated the allegations against Hanford. Meadors recommended to Warden Stepp that Hanford be terminated. Hanford alleges Meadors's recommendation was the result of unlawful racial bias.

Warden Stepp disagreed with Meadors and altered the recommended punishment to a ten-day suspension. In accordance with GEO policy, Stepp forwarded his recommendation to Vice President Clark for a final determination. Clark ultimately concluded Hanford should be suspended for ten days and demoted from Lieutenant to Corrections Officer. Clark did not discuss the matter with Meadors before imposing the suspension and demotion, which became effective on March 14, 2005.[3]

---

[3]GEO has a history of disciplining employees for use of profane language, although the record reflects no instance where an employee was demoted or terminated solely for use of profane language. One employee was found to have committed unprofessional conduct and was given a written warning. Another employee, who was white, was found to have called a co-worker a "God damn nigger" and received a thirty-day suspension. A third employee received a five-day suspension for insubordination and use of profane language. One employee was terminated because he used threatening language and approached another employee in the parking lot. Finally, an employee who referred to female employees as "whores" received a ten-day suspension.

After Hanford was demoted, Warden Stepp selected a white female employee to replace him as a Lieutenant. Candidates for the promotion were given a score based on their attendance, skills and training, experience, job performance, and an exam. Four candidates, three of whom were African-American, scored higher than the white female ultimately promoted, but each had various problems not reflected in their scores, such as being under investigation for an incident, having a spouse working in the department, having work availability issues, or being rated lower because Stepp lacked confidence in them. Stepp evaluated the applicants' scores and other criteria without input from Meadors.

On March 16, 2005, Hanford submitted two internal complaints to GEO complaining of unfair investigative procedures and that GEO policy was not correctly followed in disciplining him. Neither complaint mentioned racial discrimination. GEO investigated Hanford's complaints and determined GEO's policy had been followed in disciplining Hanford and Hanford's complaints otherwise were unfounded.

## C. Hanford's Post-Demotion Employment and Termination

After his ten-day suspension, Hanford returned to work. On March 27, 2005, he was assigned to work in a construction area. He was later assigned to work in the "H Dorm." Upon receiving this assignment, Hanford took a leave of

6

absence for medical reasons from May 23, 2005 to October 10, 2005. He filed a third grievance concerning this assignment to H Dorm during his medical absence. He complained the new assignment to H Dorm was retaliation by Meadors in response to Hanford's earlier submission of grievances related to his demotion. In October 2005, Hanford returned to work and was assigned to work in Classification.

On November 29, 2006, GEO received a letter from Clarence Freeman, Sr., a self-described "Community Leader for Justice," complaining of alleged racism and discrimination at South Bay. Enclosed with this letter was a separate letter from Hanford alleging racial discrimination at South Bay. Hanford primarily alleged that Meadors acted with racial animus against him in recommending his termination at the end of Hanford's disciplinary hearing. Although Hanford's letter purported to be dated as of August 17, 2005, Hanford did not provide his letter to GEO until it was received in the November 2006 transmittal from Freeman.

GEO assigned Investigations Director Bradley Dunn to investigate Hanford's racial discrimination allegations. Hanford did not fully cooperate with Dunn during the investigation. In December 2006, Hanford was again suspended, for five days, for violation of GEO policy by refusing to cooperate and interfering

7

with Dunn's investigation of his racial discrimination complaint.

Hanford served this suspension and then took several days of vacation and sick leave in early 2007. Hanford failed to report to work at the end of his sick leave. Ten days later, on March 26, 2007, GEO terminated Hanford for abandoning his post.

## D. District Court Proceedings

Hanford filed this action alleging GEO demoted him from Lieutenant to Corrections Officer based on his race in violation of § 1981. Hanford's one-count complaint does not allege retaliation, wrongful termination, or that GEO's decision to reassign him to H Dorm was discriminatory.

GEO moved for summary judgment, which the district court granted. The district court determined Hanford's only actionable claim was for racial discrimination in his demotion. The district court concluded Hanford did not state a prima facie case of discrimination because (1) given the disciplinary actions taken against him, he was no longer qualified for the Lieutenant position to which the white female was promoted; and (2) he did not present evidence of similarly-situated employees who were treated more favorably.[4] The district court also

---

[4]The district court reasoned each of the comparator employees identified by Hanford, including several who were disciplined short of demotion for use of profanity, were not similarly situated to Hanford because none of them possessed Hanford's unique characteristics of being a supervisor who used both racial slurs and profanity to his subordinates and then threatened to lie

found that, even if Hanford had established a prima facie case, GEO presented legitimate, non-discriminatory reasons for the demotion and Hanford had not shown the reasons were pretext for racial discrimination.[5]

Hanford filed this timely appeal.

## II.  DISCUSSION

Under 42 U.S.C. § 1981, "all persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  Section 1981 has "the same requirements of proof and use[s] the same analytical framework" as Title VII, 42 U.S.C. § 2000e-2(a). Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Where, as here, a plaintiff relies on circumstantial evidence of discrimination, we evaluate whether summary judgment is appropriate using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089 (1981).  EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002).  To make out a prima facie case of racial

---

about it during investigations.  Hanford's record also reflects at least three disciplinary actions before 2005, while most other employees identified by Hanford were first-offenders.

[5]Although Hanford's complaint also alleged racial discrimination in his termination, it appears undisputed that Hanford did not return to work after his leave was exhausted and was terminated for that reason.  In any event, Hanford raises no issue on appeal as to his termination and focuses solely on his demotion.

discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly-situated employees outside the protected class more favorably; and (4) he was qualified for the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). If the plaintiff makes a prima facie case, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its employment action. Id. If the defendant produces a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to prove the reason provided by the defendant is a pretext for unlawful discrimination. Id. "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation marks omitted). When the employer provides a reason "that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

There is no dispute that Hanford belongs to a protected class and his demotion qualifies as an adverse employment action. The only issues on appeal are whether Hanford stated a prima facie case of racial discrimination and whether

10

GEO's proffered reasons for demoting him were pretextual.[6] As for the prima facie case, the district court concluded Hanford did not show that he was qualified for the Lieutenant position, or that he was disciplined differently from other similarly-situated employees. On appeal, Hanford argues: (1) he does not need to show similarity between himself and other employees because someone outside his protected class, here a white woman, was promoted to fill the position he vacated;[7] and (2) his two-year tenure as a Lieutenant entitles him to a presumption he is

---

[6]The district court concluded Hanford's various complaints regarding GEO's handling of his disciplinary proceedings did not qualify as adverse employment actions because they did not constitute a "*serious and material* change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001).

Hanford's submissions in the district court occasionally refer to his post-demotion work assignments as continuing disparate treatment. On appeal, Hanford does not argue that those post-demotion work assignments or GEO's handling of his disciplinary proceedings were adverse employment actions. He has abandoned any such claims, and thus we do not address them. See N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 n.4 (11th Cir. 2008).

[7]On appeal, Hanford argues he does not need to show similarity between himself and other coworkers because he satisfies the prima facie case merely by demonstrating someone outside his protected class was promoted to fill the position he vacated. See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). Our recitation of the McDonnell Douglas test in Maynard included as an element that the plaintiff "was replaced by a person outside his protected class *or* was treated less favorably than a similarly-situated individual outside his protected class." 342 F.3d at 1289 (emphasis supplied). Other statements of the McDonnell Douglas test typically do not include the option that a plaintiff show he was "replaced by a person outside his protected class." E.g., Burke-Fowler, 447 F.3d at 1323 (stating that a plaintiff must show only that her "employer treated similarly situated employees outside her protected class more favorably than she was treated"). Because we resolve this case on pretext, we are not required to consider the effect, if any, of GEO's promotion of a white female to fill Hanford's Lieutenant position, or whether our recitations of the McDonnell Douglas test require clarification.

11

qualified for the position.[8]  We do not address these issues because, even assuming

arguendo that Hanford established a prima facie case of discrimination, his claim

still fails because he did not show GEO's decision to demote him was a pretext for

racial discrimination.[9]

GEO's stated reasons for demoting Hanford were that he had a history of

violating GEO policy by swearing and by threatening to make false statements,

most-recently to his subordinates.  The district court found Hanford did not present

sufficient evidence showing GEO's stated reasons for his demotion were

pretextual.  Upon review, we agree.

There is no dispute that Vice President Clark held ultimate authority over

whether and how to discipline Hanford in 2005.  Hanford has not presented any

evidence to show Clark harbored racial animus toward him or any other evidence

---

[8]The district court determined Hanford was not qualified for the Lieutenant position once he used racially-charged and profane language toward two subordinates and threatened to lie about the incident.  In Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354 (11th Cir. 1999), we stated that "if a plaintiff has enjoyed a long tenure at a certain position, we can infer that he or she is qualified to hold that particular position." Id. at 1360.  We did not elaborate on how long a plaintiff's tenure must be to qualify as a "long" tenure.  See id. (plaintiffs were store managers for 34 and 13 years).  Hanford was employed as a Lieutenant for approximately two years before he was demoted.  GEO argues Hanford's two-year tenure is not long enough for him to receive an inference of qualification, especially in light of his alleged use of racially-charged language and profanity.  We need not address this question.  Assuming arguendo that Hanford stated a prima facie case of discrimination, his claim still fails because he was unable to show GEO's decision to demote him was pretext for racial discrimination.

[9]See Cuddleback v. Fla. Board of Educ., 381 F.3d 1230, 1235 (11th Cir. 2004) ("This court may affirm a judgment on any legal ground, regardless of the grounds addressed and relied upon by the district court.")

12

to discredit Clark's stated reasons for demoting Hanford. Indeed, Clark had previously promoted Hanford to Lieutenant in February 2003 before he demoted Hanford after the incidents in 2004.

Hanford instead asserts that Assistant Warden Meadors was racist and this racism caused him to recommend Hanford's termination. Hanford bases his allegation on statements by unidentified persons that Meadors called himself a "redneck cracker," which Meadors denies.

Even if we were to assume these allegations are true and established that Meadors acted in a discriminatory way towards Hanford, Meadors's actions alone do not show pretext. In some cases, a biased discharge recommendation by an individual with no actual power to discharge may be actionable if the plaintiff can prove the biased recommendation directly resulted in the plaintiff's discharge. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1331 (11th Cir. 1999). This causation must, however, be direct. "[T]he plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." Id. (citing Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1248 (11th Cir. 1998)). One way of showing this causation is through what we have termed the "cat's paw" theory, which

13

provides causation may be proven if the plaintiff shows the decisionmaker followed an illegally-biased recommendation without "independently investigating" the reasoning behind it. Id. at 1332.

In this case, Hanford has not introduced any evidence that Meadors's alleged discriminatory animus directly influenced Vice President Clark's decision to demote him. Hanford has not introduced any evidence that either Warden Stepp or Vice President Clark acted as rubber stamps for Meadors's recommendations. The record evidence shows the contrary. Clark was two levels of review over Meadors's recommendation, furthering insulating his decision from Meadors's alleged racial bias. Stepp, who is not alleged to be biased, reviewed Meadors's recommendation for termination and reduced the recommended punishment to a suspension. Clark, who also is not alleged to be biased, then reviewed Stepp's recommendation and, after no consultation with or input from Meadors, imposed the final discipline of a demotion and a suspension. Hanford has not presented any evidence suggesting Clark was influenced by Meadors's alleged discriminatory animus or that Clark's decision was based on anything other than his independent review of Meadors's and Stepp's recommendations and his own judgment.

Consequently, we conclude Hanford failed to produce sufficient evidence that could allow a reasonable jury to find direct causation between Meadors's

14

alleged discriminatory animus and Vice President Clark's decision to demote him, and thus he failed to show that GEO's proffered legitimate, non-discriminatory reasons for demoting him were pretextual. The district court did not err in granting summary judgment to GEO on Hanford's racial discrimination claim.

**AFFIRMED**.