[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 26, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10927
Non-Argument Calendar

_____

D. C. Docket No. 07-01831-CV-2-VEH

FELICIA Y. DANIELS,

Plaintiff-Appellant,

versus

MIKE HALE, in his official capacity as
Sheriff of Jefferson County, Alabama,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(October 26, 2009)

Before BIRCH, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

In this employment action for racial discrimination and retaliation, Plaintiff

Felicia Y. Daniels appeals the district court's order granting summary judgment in

favor of Defendant Mike Hale, in his official capacity as Sheriff of Jefferson County, Alabama.  After review, we affirm.

## I. BACKGROUND

### A.    Prior Discrimination Claim Made in 2002

From December 31, 1996 to December 31, 2004, Plaintiff Felicia Y. Daniels, an African-American female, worked as a medical clerk in the Jefferson County Department of Health.  While employed in the Department of Health, Daniels applied for a job as a property control clerk in the Jefferson County Sheriff's Department.  She was not selected for that position.  Daniels then filed a complaint on November 21, 2002 against James Woodward, the prior Sheriff, in his capacity as Sheriff of Jefferson County, and the Jefferson County Commission, alleging pregnancy discrimination based on the denial of her application.  The case settled on August 30, 2004.

### B.    Current Discrimination & Retaliation Claims Made in 2006

After the above case settled, Daniels did begin employment with the Jefferson County Sheriff's Department on January 4, 2005 as a Public Safety Dispatcher II ("PSD II") in the Communications Department.  The job description for a PSD II in the Sheriff's Department states that it "involves operating a radio dispatch system in a communication center, receiving emergency and non-

2

emergency calls, and dispatching pubic safety personnel as warranted." A PSD II must also have "[k]nowledge of dispatch codes. Skill in using [sic] computer keyboard. Skill in telephone etiquette . . . [and an a]bility to make decisions and communicate orally during emergency situations." In the district court, Daniels' brief acknowledged that a PSD II must be "able to timely and effectively gather information," be "assertive," have "good verbal communication skills," "enunciate and speak clearly so that the public and the deputy sheriffs can understand the information being conveyed," and be "aggressive and maintain control of the situation."

Several of Daniels' supervisors indicated her performance was deficient. Lieutenant Emma Moore joined the Communications Department as a supervisor in July 2005, and supervised Daniels. Moore testified that she received numerous complaints from deputies indicating that they could not hear or understand Daniels while she was dispatching. Dispatcher Sam Maske, who trained Daniels on call-taking and dispatching, documented his daily observations in which he rated Daniels' telephone skills as a "2" or "3" on a scale of 7 and indicated that she was struggling to understand callers. At the time Maske stopped training Daniels, he stated that Daniels could not dispatch by herself.

Sergeant Sheila Garrett, who worked in the radio room and was responsible

for training Daniels, testified that Daniels received complaints regarding her performance as a PSD II. On one occasion, an individual calling 911 regarding a domestic dispute complained that Daniels did not dispatch a car and informed the caller to "call back." Sergeant Garrett testified that this was not the action Daniels should have taken and that a car should have been dispatched. Leo Taylor was a PSD II and a trainer for new PSD II recruits, including Daniels. Taylor concluded that Daniels had difficulty performing call-taking and data entry and was not comprehending the information she needed to be effective. Taylor informed Sergeant Garrett of his criticisms of Daniels' performance.

On April 22, 2005, Daniels received performance counseling for an incident that occurred on the same day. During the incident, Daniels took a call, gave incorrect advice, and then incorrectly coded the call. On April 28, 2005, Daniels was removed from the radio after an officer in the Bessemer Patrol Division complained that his personnel were having difficulty hearing and understanding Daniels.

Daniels' white male coworker, Dan Peoples, was also a PSD II. Although Peoples was initially slower than other PSD IIs at call-taking and dispatching, he gradually increased his speed and eventually became proficient at the job. Unlike Daniels, Peoples received no written complaints. Peoples and Daniels were both

4

scheduled to attend a 40-hour training session. Daniels, however, did not attend the training because she tendered her resignation before the start date.

After the incidents of April 22 and 28, 2005, Sergeant Garrett met with Daniels to discuss her performance. Shortly thereafter, Daniels advised the Sheriff's Department that she wished to return to her former job with the Jefferson County Department of Health. On May 6, 2005, Daniels submitted her resignation to the Sheriff's Department and requested a transfer. Daniels' transfer request was denied by the Jefferson County Personnel Board on May 10, 2005. On the same day, Daniels asked Sheriff Hale to allow her to rescind her resignation. On May 13, 2005, Sheriff Hale approved Daniels' request to rescind her resignation.

Sometime after July 2005, Lieutenant Moore, who supervised Daniels, was asked by Moore's supervisor Captain Parker to make a recommendation regarding Daniels' employment. On October 25, 2005, based on the Personnel Board's recommendation that Daniels should be terminated because she was "incompetent" and after speaking with individuals and reviewing documents, Lieutenant Moore advised Captain Parker that Daniels had "made no effort to improve her deficiencies . . . only perform[ed] the duty of call-taker and continue[d] to make errors when assigning codes to the calls."[1] On November 1, 2005, the Sheriff's

---

[1]Daniels took sick leave on October 12, 2005. The decision to terminate Daniels was made before she took leave on October 12 and before she notified the Sheriff's Department that

5

Department notified Daniels that she was being terminated, placing her on administrative leave without pay until November 24, 2005.[2]

On March 26, 2006, Daniels filed a charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging racial discrimination and retaliation on account of her 2002 charge of pregnancy discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) & 2000e-3(a), and 42 U.S.C. §§ 1981 & 1983. The EEOC issued Daniels a right-to-sue notice.

## C.    District Court Proceedings

Daniels then filed a district court complaint against Hale in his official capacity as the Sheriff of the Jefferson County Sheriff's Department alleging the same claims.[3] Specifically, Daniels alleged that she was not properly trained for

---

she was taking leave.

[2]The November 1 termination was rescinded, and Daniels was placed on administrative leave without pay until November 24, 2005 to allow her to seek other employment through the Personnel Board. Daniels was officially terminated on November 25, 2005.

[3]Daniels' original complaint named only the Jefferson County Sheriff's Department, but she later amended it to drop the Sheriff's Department and add Hale as Sheriff of Jefferson County. Daniels' amended complaint also claimed retaliation under the Family Medical Leave Act (the "FMLA"). The district court granted summary judgment on the FMLA claim. In addition, the district court granted dismissal of all of Daniels' claims for money damages under § 1981 and the FMLA on Eleventh Amendment immunity grounds. Because Daniels does not raise issues relating to any of these claims on appeal, they are waived. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating that an issue not raised on appeal is waived). Thus, this appeal involves only Daniels' claims made under Title VII and for injunctive relief under §§ 1981 and 1983.

her position and that a similarly situated white male with similar performance deficiencies was not terminated. Daniels also alleged retaliation on account of her filing the 2002 complaint against the prior Sheriff of the Jefferson County Sheriff's Department, James Woodward. The district court granted summary judgment in favor of Defendant Sheriff Hale on Daniels' discrimination and retaliation claims.

## II. DISCUSSION

On appeal, Plaintiff Daniels argues that the district court erred in granting Defendant Hale's motion for summary judgment.[4]

Racial employment discrimination and retaliation are actionable under 42 U.S.C. § 1981 and Title VII. Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." Claims against state actors for violations of § 1981 must be brought pursuant to 42 U.S.C. § 1983. Butts v. County of Volusia, 222 F.3d 891, 892-94 (11th Cir. 2000). Under Title VII, an employer may not

---

[4]We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion, here Daniels. Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). "Summary judgment is appropriate only when the evidence before the court demonstrates that 'there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

7

"discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Both of these statutes [Title VII and § 1981] have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); see also Rioux v. City of Atlanta, 520 F.3d 1269, 1275 n.5 (11th Cir. 2008). Thus, our analysis here applies equally to Daniels' claims under Title VII and § 1981, unless otherwise specified.

## A.    Prima Facie Racial Discrimination

Daniels' Title VII claim alleging disparate treatment is analyzed in accordance with the framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25 (1973).[5] Under McDonnell Douglas, the plaintiff bears the initial burden to establish a prima facie case of racial discrimination. Id. The plaintiff can make out a prima facie case by showing that (1) "she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside

---

[5]A Title VII plaintiff may also establish discrimination through direct evidence. Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). Daniels has not submitted any direct evidence of discrimination and therefore relies only on circumstantial evidence.

of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). To demonstrate that the individual was qualified for a particular position, a Title VII plaintiff must show that she satisfied the employer's objective qualifications. Vessels v. Atlanta Indep. School Sys., 408 F.3d 763, 768 (11th Cir. 2005).

We first conclude that the evidence established that Daniels was unable to fulfill the job responsibilities of a PSD II. Even though she initially was deemed qualified by the Personnel Board after testing and interviews, subsequent objective evaluations of Daniels' performance from numerous witnesses indicate that she had difficulty communicating and handling calls, which were skills required the PSD II job description, and that she received continuing complaints about her performance. Thus, Daniels did not show she was qualified to do the PSD II job as required by the fourth prong of the prima facie case.

Even assuming arguendo that Daniels made a prima facie showing that she was objectively qualified to perform the PSD II position, Daniels also failed to establish that her employer treated similarly situated employees outside of her protected class more favorably than she was treated. "In determining whether [other employees] are similarly situated for purposes of establishing a prima facie

9

case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Maynard, 342 F.3d at 1289 (internal quotation marks omitted). To show that employees are similarly situated, the plaintiff must establish that the employees are "similarly situated in all relevant respects." Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004). We have required that the comparator's conduct be "nearly identical" to prevent courts from second-guessing employers' reasonable decisions. Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

Unlike Daniels, Dan Peoples, the white male PSD II comparator, was initially slow in performing his duties as a PSD II, but eventually became proficient at the job. Peoples did not receive the continuing complaints or make the errors that Daniels had. We recognize that Daniels and Peoples were scheduled to attend the same 40-hour training. Daniels, however, resigned her position before the start date of that training, and she has not identified any employee who was allowed to attend the 40-hour training after having tendered and then rescinded a resignation. Thus, Daniels fails to demonstrate that Peoples was similarly situated to her. As a result, Daniels has not met her initial burden to show that she received disparate treatment when compared to Peoples, and she has not identified any other employees as similarly situated.

Consequently, the district court did not err in granting summary judgment in favor of Hale on Daniels' racial discrimination claims under Title VII and § 1981.

**B.      Retaliation for a Charge Under the Pregnancy Discrimination Act**

Title VII prohibits retaliation by an employer against an individual based on the individual's opposition to an unlawful employment practice or filing of a charge of discrimination.  42 U.S.C. § 2000e-3(a).  Under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), Title VII prohibits retaliation based on an employee's filing a charge of pregnancy discrimination.  To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relation between the two events.  Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994).  "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated."  Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (internal quotation marks omitted).  Such awareness must be shown "with more evidence than mere curious timing coupled with speculative theories."  Corbitt v. Home Depot U.S.A., Inc., 573 F.3d 1223, 1243 (11th Cir. 2009) (internal quotation marks omitted).

Daniels failed to establish that any of the members of the Sheriff's

11

Department, including Lieutenant Moore, had knowledge of the 2002 lawsuit Daniels filed against the previous Sheriff that was settled on August 30, 2004. Lieutenant Moore testified that she did not learn of the prior lawsuit until September 2008 and that she did not know who Daniels was until July 2005. Although Daniels points out that Moore was listed by the Sheriff's Department on August 13, 2004 as a "will-call" witness for the prior lawsuit, this piece of evidence alone is not enough to give rise to the inference that Moore knew about the lawsuit and is thus insufficient to create a genuine issue of material fact.

Even if Lieutenant Moore knew of Daniels' pregnancy discrimination complaint, Daniels also failed to show a temporal proximity sufficient to establish causation. "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal proximity, without more, must be 'very close.'" Id. (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)).

Daniels filed her pregnancy discrimination lawsuit in 2002, and the lawsuit was settled in August 2004. The decision to discharge Daniels was made in October 2005. Thus, more than a year passed between the settlement of Daniels'

12

lawsuit in August 2004 and the decision to discharge her, made in October 2005. This is too remote to establish causation based on temporal proximity alone. This is especially true here where, after that lawsuit was settled, the Sheriff's Department hired Daniels as a PSD II in 2005.

Daniels urges that causation should be inferred based on the fact that Lieutenant Moore, Daniels alleges, gained authority to discharge Daniels in October 2005, the same month that Moore recommended termination.[6] However, even assuming Moore had authority to terminate Daniels, temporal proximity is measured from the time in which the plaintiff engaged in the protected activity, not the time when one of several of the employer's agents gained authority to terminate her. See Thomas, 506 F.3d at 1363. Thus, Daniels' causation argument based on Moore's gaining authority to fire her in October 2005 misapprehends the temporal proximity analysis and lacks merit. In any event, given that the Sheriff's Department hired Daniels as a PSD II in 2005 after her prior lawsuit against the Sheriff's Department was settled in 2004, this further defeats her causal connection argument.

For all of these reasons, we affirm the district court's grant of summary

---

[6]Moore testified that she did not have authority to terminate Daniels at any time, but was asked merely to make a recommendation to Captain Parker as to whether Daniels should be terminated or not.

judgment in favor of Defendant Hale on Plaintiff Daniels' discrimination and

retaliation claims.[7]

**AFFIRMED.**

---

[7]On appeal, Daniels also argues that the district court erred in finding that she was judicially estopped from asserting any monetary claims. Because we affirm the district court's grant of summary judgment in favor of Defendant Hale on the merits, we need not reach Daniels' judicial estoppel argument.