Jackie ROBINSON, Plaintiff–Appellant,

v.

COLQUITT EMC, Dixie Lightfoot, in her individual and official capacity, Doug Loftis, in his individual and official capacity, Defendants–Appellees,

Justin Brown, et al., Defendants.

No. 15–11826
Non–Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 06/02/2016

Karla L. Walker, Copeland Haugabrook & Walker, Valdosta, GA, for Plaintiff–Appellant.

Frank L. Butler, III, Jeffery Lyn Thompson, John Lawrence Weltin, Constangy Brooks Smith & Prophete, LLP, Macon, GA, for Defendants–Appellees.

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Jackie Robinson, an African–American, appeals from the district court's grant of summary judgment in favor of Defendant–Appellee Colquitt

Electric Membership Corporation ("Colquitt") in his employment-discrimination suit, brought pursuant to Title VII, 42 U.S.C. § 2000e–2(a), and 42 U.S.C. § 1981.[1] Colquitt is a non-profit utility company operating in Southern Georgia. Robinson began working for Colquitt in 2002 and had an unblemished record with the company until 2009. Following a series of disciplinary incidents in 2011 and 2012, Colquitt management held a "last-chance" meeting with Robinson in May 2012. At that time, Colquitt advised Robinson that the next violation of any kind would result in his termination. Robinson was fired after he failed to timely respond to a service call in June 2012.

Robinson claims that he was actually fired because of his race and that Colquitt's justification for firing him is not worthy of belief. He contends that the service-call justification does not stand up to review and that he was disciplined more harshly than white employees for similar violations. The district court granted summary judgment to Colquitt, concluding that Robinson failed to present an initial case of discrimination and that he did not show that Colquitt's proffered explanation for his termination was actually a pretext for discrimination. After careful review, we affirm.

We review *de novo* a district court's order granting summary judgment, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1161–62 (11th Cir. 2006). Summary judgment is appropriate when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Both Title VII and § 1981 make it unlawful for an employer to discharge any individual because of his race. 42 U.S.C. § 2000e–2(a)(1); 42 U.S.C. § 1981(a) ("All persons ... shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens."). In the employment context, the elements of a race-discrimination claim under § 1981 are the same as a Title VII disparate-treatment claim. *Rice–Lamar v. City of Fort Lauderdale, Fla.*, 232 F.3d 836, 843 n. 11 (11th Cir. 2000). Therefore, we analyze both claims under the Title VII framework.

Where the plaintiff relies on only circumstantial evidence of discrimination, as in this case, we may apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1289 (11th Cir. 2003). Under the *McDonnell Douglas* framework, the plaintiff shoulders the initial burden of establishing a *prima facie* case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). If the plaintiff establishes such a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Id.* Once the employer proffers a nondiscriminatory reason for the employment action, "the inference of discrimination

---

1.  Robinson's complaint initially listed several individuals as defendants, but they were later voluntarily dropped from the lawsuit. The complaint also included additional claims based on disparate impact, a hostile work environment, retaliation, wrongful termination, and intentional infliction of emotional distress. Robinson abandoned his disparate-impact and retaliation claims prior to summary judgment. The district court granted summary judgment to Colquitt on Robinson's remaining claims, and Robinson does not challenge the disposition of those claims on appeal. Accordingly, the only issue in this appeal is whether Robinson was terminated because of his race.

drops out of the case entirely," and the plaintiff then has the opportunity to show that the employer's proffered reason is a pretext for discrimination. *Id.* at 768.

The plaintiff's burden at the pretext stage "merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010). "A plaintiff may prevail on an employment discrimination claim by either proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).

We do not sit as a super-personnel department judging the wisdom or accuracy of the employer's decision. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, "our inquiry is limited to whether the employer gave an honest explanation of its behavior." *Id.* (internal quotation marks omitted); *see Alvarez*, 610 F.3d at 1266 ("The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and ... not on reality as it exists outside of the decision maker's head."). Therefore, in attempting to show pretext, a plaintiff must meet the employer's reason head on and rebut it; he cannot simply recast the employer's reason, substitute his business judgment for that of the employer, or otherwise quarrel with the wisdom of the decision. *Alvarez*, 610 F.3d at 1265.

Here, we agree with Robinson—as does Colquitt—that he established a *prima facie* case of discrimination. A plaintiff may create an inference of discrimination regarding his termination with proof that (1)

he was a member of a protected class; (2) he held a position for which he was qualified; (3) he was fired from that position; and (4) he was "replaced by a person outside the protected class *or* suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002) (emphasis added); *see also Coutu v. Martin Cty. Bd. of Cty. Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995) (stating the fourth element as "replace[ment] by a person outside the protected class"). The district court found that Robinson's *prima facie* case failed because he did not point to a similarly situated comparator who was treated more favorably. But he did not need to because it is undisputed that Robinson was replaced by someone outside the protected class. *See Coutu*, 47 F.3d at 1073. The district court's error is harmless, though, because the court proceeded to the later stages of the *McDonnell Douglas* analysis. We turn to those stages now.

■ Robinson asserts that Colquitt has failed to proffer a legitimate, nondiscriminatory reason for his termination. We disagree. Colquitt claimed that it fired Robinson because he repeatedly violated the company's safety policies and general procedures, including one violation after a "last-chance" disciplinary meeting with management in which Robinson was warned that any further violation would result in his immediate termination. This plainly is a nondiscriminatory reason that "might motivate a reasonable employer" to terminate an employee. *Chapman v. AI Transp.*, 229 F.3d 1012, 1030–31 (11th Cir. 2000) (*en banc*); *see Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987) (an employer does not unlawfully discriminate against an employee "if the employer fired an employee because it honestly believed that the employee had

violated a company policy, even if it was mistaken in such belief").

In support of its proffered explanation, Colquitt provided ample evidence of Robinson's disciplinary history. This disciplinary history reflects the following: a written warning for substandard work and carelessness (October 2009); a four-day suspension for substandard work (March 2011); a five-day suspension for dishonesty involving an accident between company vehicles (May 2011); a written warning for tardiness (September 2011); a four-day suspension for substandard work and carelessness (October 2011); a three-day suspension for failing to timely respond to a service call (May 2012); and, finally, termination for again failing to timely respond to a service call (June 2012). The record also shows two other incidents for which Robinson was not disciplined.

After the incident in October 2011, Colquitt management met with Robinson and told him that another incident of substandard work, conduct, safety, disobedience, or carelessness would result in immediate termination. Colquitt explained to Robinson that he needed to be "an exemplary Lineman for the next several years." Following the May 2012 service-call discipline, Colquitt management again met with Robinson for a "last-chance" meeting. The memorandum from this meeting reflects that Robinson was told that Colquitt had run out of disciplinary and training options and that the next incident of "any kind" would result in immediate termination.

▇ The facts of the final incident triggering Robinson's termination are as follows. On June 30, 2012, Robinson was "on call," meaning he was not actively working but, if called by a Colquitt dispatcher, he was required to respond to customer complaints about power outages. Around 4:02 p.m., a Colquitt dispatcher called Robinson and notified him of a power outage. Robin-son stated that he was ill but that he would still try to make the call. He had become overheated cutting the grass in his yard and had been throwing up when the dispatcher called. Robinson fell asleep after receiving the call, though, and another dispatcher called Robinson around 4:45 p.m. Robinson claims that he then proceeded to the service call and restored the customer's lights at 5:48 p.m.

Robinson contends that Colquitt's reliance on his failure to timely respond to a service call is pretextual for several reasons. First, he argues that Colquitt failed to follow its own protocol regarding service calls. Normally, when a dispatcher is unable to reach the first employee on call within ten to fifteen minutes, Robinson explained, the dispatcher contacts the next person on call.

But that fact does not call into question Colquitt's actions in this case. Robinson responded to the first dispatcher's call and said he could make it despite his illness, so there would have been no reason for the dispatcher to move on to the next person. And while Robinson contends that this shows "Colquitt's willingness to inconvenience a customer," it is unclear how that follows. No evidence suggests that Colquitt knew Robinson could not respond in a timely manner, even if he was feeling ill, nor was it unreasonable for Colquitt to expect that Robinson would respond to the call in a timely fashion.

Second, Robinson points to the purported "subjective application" of an unwritten policy with respect to the expected response time of on-call employees when they received a service call from a dispatcher. He cites a discrepancy in testimony over whether the expected response time was 15 or 30 minutes. However, even under his version of events, Robinson's response time was nearly two hours from

the service call. Accordingly, even if the expected response time was 30 minutes, he was still subject to discipline for failing to timely respond.

Finally, Robinson argues that no other employee at Colquitt had been terminated for failing to timely respond to a service call. However, the June 30 incident followed a string of disciplinary issues culminating in a warning that a future violation of "any kind" would result in immediate termination. Robinson does not claim that another employee who had received a similar warning was not fired after failing to timely respond to a service call. Consequently, Robinson has not shown that Colquitt's decision to terminate his employment based on his failure to timely respond to the service call was pretextual.

Robinson's other main contention is that his disciplinary history has been skewed by race discrimination. He does not challenge the fact of his disciplinary history (or, to a large degree, the underlying incidents), but he does challenge the fairness of it. Specifically, he contends that he was disciplined more harshly than white employees for similar misconduct. Robinson primarily relies on two employees as comparators: (1) John Fisher and (2) Ray Parrish.

When a plaintiff seeks to show that he is similarly situated to an employee who was treated more favorably, he must show that he and the comparator are "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). In cases involving discriminatory discipline, we consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. *Maynard*, 342 F.3d at 1289. Comparator evidence may be used to show

pretext. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276–77 (11th Cir. 2008).

■ Here, Robinson has not shown that Colquitt treated Fisher and Parrish differently from him in a way that is suggestive of pretext. With regard to Fisher, the evidence does not support an inference that Colquitt strayed from its progressive disciplinary policy when addressing Fisher's conduct. Fisher was disciplined for substandard work in August 2011 and suspended for three days. At that time, he was warned that the "next incident" could result in more severe sanctions, including termination. Robinson contends that Fisher, in contrast to Robinson, was not terminated for his next incidents: an attendance issue and a vehicle accident. However, undisputed testimony established that the term "next incident" refers to the next incident in the same disciplinary category.[2] Thus, if Fisher had had another substandard-work incident, he would have faced the enhanced penalties. But he did not; the next two incidents were in other categories. Robinson's own disciplinary history reflects this same policy was applied to him. For example, when Robinson was disciplined in March 2011 for substandard work, he was warned that the "next incident" would result in suspension, reassignment and demotion, or termination. Robinson then had an incident involving tardiness in September 2011, but he was not suspended, demoted, or terminated because the incident was in a different disciplinary category. Fisher's disciplinary history is not otherwise comparable to Robinson's in severity or quantity. In short, Robinson has not shown pretext with regard to NPS's discipline of Fisher.

---

**2.** The separate disciplinary categories included substandard work, tardiness, conduct, safety, absence, disobedience, and carelessness.

Robinson also has not shown that Parrish is a proper comparator for purposes of establishing pretext. For the only incident that provides a direct comparison, the March 2011 "hot phase" incident, Parrish received the same discipline as Robinson (four days' suspension). Parrish, as crew foreman, was suspended for failing to report a serious incident to a supervisor, while Robinson was suspended for substandard work. Following this incident, Colquitt management informed Parrish that there had been "a couple of incidents" with members of his crew over the past 18 months and that Colquitt would institute a form of daily monitoring of Parrish's leadership. Robinson claims that this shows that Parrish had a "long history of performance issues" but was hardly disciplined. However, the record fails to show whether Parrish's performance issues, to the extent there were any, were sufficiently similar to warrant comparison to Robinson's. *See Maynard*, 342 F.3d at 1289; *Holifield*, 115 F.3d at 1562. Broadly claiming that each had work-performance issues is inadequate to permit a comparison for purposes of establishing pretext.

Next, Robinson claims that he was punished more harshly than a white employee for the same conduct arising out of an accident between two company trucks, driven by Robinson and the other employee, respectively, in May 2011. Both Robinson and the white employee covered up and lied about the accident, in addition to violating other rules. The white employee was suspended for three days, while Robinson was suspended for five days and demoted. Colquitt asserts that Robinson was punished more severely because he caused the accident, Colquitt determined that he initiated the cover-up of the accident, and he had a recent disciplinary incident in March 2011. Robinson has put forth no evidence or argument to call into question the honesty of Colquitt's explanation for the difference in punishment. Accordingly, he has not shown pretext based on this incident.

Finally, Robinson broadly refers to various other instances of purportedly unequal punishment for similar incidents. However, the record lacks evidence to permit proper comparison regarding those instances, and Robinson's conclusory allegations of discrimination are, without more, insufficient to carry his burden. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). Moreover, these incidents, even if suggestive of pretext, are only indirectly related to Colquitt's explanation for Robinson's termination and are not sufficient evidence for a jury to return a verdict in favor of Robinson. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (summary judgment may be granted "[i]f the evidence is merely colorable or is not significantly probative" (citations omitted)).

While the *McDonnell Douglas* framework is not the exclusive means by which a party can create a genuine issue for trial, we conclude, largely for the same reasons we have rejected his pretext arguments, that Robinson has not presented a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker," *Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quoting *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 734 (7th Cir. 2011) (footnote omitted)), even if the issue had been properly raised to the district court.

Accordingly, we affirm.

**AFFIRMED.**